UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALCY JOSEPH, JR.                                              CIVIL ACTION

VERSUS                                                          NO. 18-1746

29TH JUDICIAL COURT                                   SECTION: "I"(3)

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, Alcy Joseph, Jr., filed the instant *pro se* and *in forma pauperis* federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[1]  For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

Petitioner was convicted of four counts of distribution of cocaine under Louisiana law on October 11, 1995.[2]  On May 9, 1996, he was sentenced on each count to a concurrent term of twenty years imprisonment.[3]  On January 28, 1997, the Louisiana Fifth Circuit Court of Appeal affirmed those convictions and sentences.[4]  The Louisiana Supreme Court then denied his related writ application on September 4, 1998.[5]

---

[1] Petitioner is a notorious filer of frivolous litigation, a fact which has resulted in him being rendered ineligible to file some types of actions without prepayment of the required filing fees pursuant to the "three strikes" provision of 28 U.S.C. § 1915(g).  See Joseph v. Tripkovick, Civ. Action No. 09-8422 (E.D. La. Jan. 12, 2010) (Wilkinson, M.J.) (denying Joseph pauper status in a federal civil rights action pursuant to § 1915(g), noting that he had previously filed twenty-eight lawsuits in this Court, at least six of which were dismissed as frivolous, malicious, and/or for failure to state a claim).  However, because he is no longer incarcerated and the instant petition seeks federal habeas corpus relief, § 1915(g) does not apply to the instant filing.  See White v. Thaler, 610 F.3d 890, 897 (5th Cir. 2010) ("[T]his Court has held that a § 2254 proceeding is not a 'civil action' for the purposes of the three-strikes section of the Prison Litigation Reform Act (PLRA), which governs in forma pauperis actions by prisoners ….").

[2] State Rec., Vol. 5 of 11, transcript of October 11, 1995, p. 173; State Rec. Vol. 3 of 11, minute entry dated October 11, 1995; State Rec., Vol. 3 of 11, jury verdict form.

[3] State Rec., Vol. 6 of 11, transcript of May 9, 1996; State Rec., Vol. 3 of 11, minute entry dated May 9, 1996.

[4] State v. Joseph, No. 96-KA-615 (La. App. 5th Cir. Jan. 28, 1997); State Rec., Vol. 6 of 11.

[5] State v. Joseph, 723 So. 2d 953 (La. 1998); State Rec., Vol. 6 of 11.

Over the next two decades, petitioner filed various pleadings in the Louisiana state courts concerning those convictions.[6]  However, not ultimately satisfied with the results of those efforts, he filed the instant federal habeas corpus application on February 9, 2018.[7]

On March 23, 2018, the state filed a response to that federal application noting that petitioner was no longer incarcerated.  The state further contended that, based on the allegations contained in the application, it appeared as though petitioner's sentences fully expired before he filed the application.  The state argued that if petitioner was indeed no longer "in custody," then this Court lacked jurisdiction in this matter.[8]

On March 26, 2018, the undersigned ordered that, on or before April 26, 2018, petitioner file a reply to the state's response showing cause as to why this matter should not be dismissed for lack of subject matter jurisdiction.  It was further ordered that if he contended that he was still "in custody" with respect to the challenged convictions, then he must explain his basis for that contention.[9]  Because petitioner filed no reply whatsoever in response to that order, the undersigned issued a report recommending that petitioner's application be dismissed for failure to prosecute.[10]

---

[6] Those pleadings, which were numerous, are summarized in great detail in the state's supplemental response in this proceeding, Rec. Doc. 20, and need not be recounted herein.

[7] That original application, Rec. Doc. 1, was deemed deficient by the Clerk of Court; however, petitioner then filed a supplemental petition on March 9, 2018, Rec. Doc. 4.

[8] Rec. Doc. 10.  See 28 U.S.C. §§ 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws or treaties of the United States ….") and 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); Maleng v. Cook, 490 U.S. 488, 491 (1989) ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed. … We have never held … that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed."); Mays v. Dinwiddie, 580 F.3d 1136, 1139 (10th Cir. 2009) ("The custody requirement is jurisdictional.").

[9] Rec. Doc. 11.  Although the Rules Governing Section 2254 Cases in the United States District Courts do not require that a petitioner file a reply to pleadings filed by a respondent, such replies are allowed, see Rule 5(e), and a federal habeas court is permitted to order such replies in appropriate cases, see Martinez v. Johnson, 104 F.3d 769, 771-72 (5th Cir. 1997).

[10] Rec. Doc. 12.  A district court may *sua sponte* dismiss an action for failure to prosecute or to comply with any court order. Fed. R. Civ. P. 41(b); McCullough v. Lynaugh, 835 F.2d 1126, 1127 (5th Cir. 1988).  Because the respondent

However, petitioner thereafter filed objections to the Report and Recommendation, stating that he had filed a response to the Court's order and contending that he was still on parole with respect to the challenged convictions.[11]  In light of that objection, the United States District Judge entered an Order stating:

> **IT IS ORDERED** that Joseph's objection is **SUSTAINED** and the report of recommendation of the United States Magistrate Judge is **NOT ADOPTED**.
> **IT IS FURTHER ORDERED** that, no later than **JULY 5, 2018**, Joseph shall provide the Court with (1) a copy of the reply he claims to have submitted previously and (2) evidence or documentation showing that he is, in fact, still on parole with respect to his prior state court convictions.
> **IT IS FURTHER ORDERED** that the United States Magistrate Judge shall consider the materials submitted by Joseph, if any, and issue another report and recommendation.
> **Joseph is cautioned that failure to file the requested materials by the deadline may result in the dismissal of his petition.**[12]

Petitioner attempted to comply with that Order by submitting a computer print-out titled "DPS&C CORRECTION SERVICES MASTER RECORD" and dated November 13, 2013.[13] Because that administrative record was unclear at best, petitioner was then ordered to submit additional evidence or documentation clearly showing that he was still on parole with respect to the challenged convictions.[14]  Thereafter, he submitted documentation supporting his contention,[15] and the undersigned's staff confirmed with the Louisiana Board of Pardons and Parole that

---

submitted a response asserting a facially valid defense to the action and petitioner ignored the Court's order to file a reply in response to that defense, the undersigned determined that dismissal was appropriate.  See Adams v. Justice, 145 Fed. App'x 889 (5th Cir. 2005) (holding that dismissal of habeas petition pursuant to Rule 41(b) was proper).

[11] Rec. Doc. 14.

[12] Rec. Doc. 15.  The burden to submit evidence on this issue was placed on petitioner because it is he who bears the burden of proof to establish that the custody requirement is met.  See, e.g., Bryant v. Kansas, No. 13-3153, 2014 WL 220488, at *1 (D. Kan. Jan. 21, 2014) ("It is the petitioner's burden to establish that the custody requirement is satisfied."); Brown v. Wenerowicz, Civ. Action No. 13-430, 2013 WL 2404152, at *4 (W.D. Pa. May 31, 2012) ("[I]t is the burden of the habeas petitioner to establish the jurisdictional predicate that he was in custody at the time of filing his habeas petition."); Holden v. Marquez, No. 3:06-cv-00093, 2007 WL 485209, at *4 (D. Alaska Feb 12, 2007) ("In a federal habeas proceeding, the burden is on the petitioner … to show his entitlement to relief, including the fact that his sentence has not expired for purposes of the 'in custody' requirement."), aff'd, 329 Fed. App'x 749 (9th Cir. 2009).

[13] Rec. Doc. 16-1, pp. 3-5.

[14] Rec. Doc. 17.

[15] Rec. Doc. 18.

petitioner is in fact on parole with respect to the challenged convictions until November 18, 2019. Accordingly, the undersigned concluded that petitioner met the habeas corpus custody requirement[16] and ordered the state to file a supplemental answer to petitioner's federal application.[17]

On September 21, 2018, the state then filed a supplemental answer arguing, *inter alia*, that petitioner's federal application is untimely.[18]  On October 3, 2018, petitioner filed a reply to the state's supplemental response.[19]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his § 2254 claims within one (1) year of the date on which his underlying state criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).[20]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

---

[16] See Jones v. Cunningham, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute …."); Freeman v. Georgia, 599 F.2d 65, 66 n.1 (1979) ("The fact that Freeman may have been released on parole after serving a third of his twenty year sentence does not affect § 2254 habeas jurisdiction since it is well-established that the writ may be used though the prisoner has been released on parole.").

[17] Rec. Doc. 19.

[18] Rec. Doc. 20.

[19] Rec. Doc. 21.

[20] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, petitioner does not argue that those alternative provisions are applicable in the instant case.

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on September 4, 1998.[21]   Accordingly, his state criminal judgment became final for AEDPA purposes, and his federal limitations period therefore commenced, on December 3, 1998. The federal limitations period then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

As the state notes in its response, petitioner filed numerous state applications of various types after his convictions became final.  Although not all of those filings would qualify as applications for "State post-conviction or other collateral review" for the purposes of § 2244(d)(2),[22] many would.  Therefore, undoubtedly, at least *some portion* of the almost two decades which passed after his convictions became final was tolled pursuant to § 2244(d)(2).

Fortunately, however, this Court need determine which of petitioner's many state court filings actually qualified as applications for "State post-conviction or other collateral review" for the purposes of § 2244(d)(2) or the precise amount of tolling credit to which he would be entitled

---

[21] State v. Joseph, 723 So. 2d 953 (La. 1998); State Rec., Vol. 6 of 11.

[22] Only motions which seek review of the actual state court judgment resulting in confinement or the underlying substantive habeas claim qualify for tolling under § 2244(d)(2).  See Moore v. Cain, 298 F.3d 361, 336-67 (5th Cir. 2002).  Accordingly, motions aimed at some other purpose, such as a mandamus application simply seeking an order compelling a court to perform its duty does not qualify, because it does not directly "challenge the judgment pursuant to which [a petitioner] is incarcerated."  Id. at 367.  Similarly, motions seeking only transcripts and other documents likewise do not qualify.  See e.g., Torns v. Mississippi, No. 01-60939, 2002 WL 31730353, at *1 (5th Cir. Nov. 22, 2002) ("The filing of [a] motion for transcripts in the trial court [does] not toll the limitations period because it [does] not constitute collateral review with respect to the pertinent judgment." (quotation marks omitted)); Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001).

based on those filings.  Although a Court must often engage in such precise calculations in close

cases, this is not such a case.  On the contrary, where, as here, a petitioner has clearly allowed a

period of time in excess of one year to elapse uninterrupted by *any* pending state court applications,

the existence of that period alone renders his federal application untimely.  See, e.g., Ortego v.

Banks, Civ. Action No. 10-4431, 2011 WL 1791046, at *2 (E.D. La. Apr. 20, 2011), adopted, 2011

WL 1791595 (E.D. La. May 9, 2011);[23] Taylor v. Terrell, Civ. Action No. 07-2890, 2007 WL

3245455, at *2-3 (E.D. La. Nov. 2, 2007).[24]

---

[23] In Ortego, the Court observed:

> The record reflects that petitioner filed a number of applications and motions in state court concerning his criminal proceedings over the years.  The state disputes whether those various filings tolled the federal limitations period.  However, this Court need not resolve that issue.  Even if petitioner is given full tolling credit for all of his state court filings, **he had no state court filings of any type pending at any time during the years 2007-2009**; therefore, he obviously is not entitled for any statutory tolling for that prolonged period. As a result, obviously more one year elapsed untolled between the date his state conviction became final and the date on which this federal application was filed ….  Accordingly, the application is untimely unless petitioner is additionally eligible for equitable tolling.

Ortego, 2011 WL 1791046, at *2 (footnotes omitted).

[24] Similarly, in Taylor, the Court observed:

> [D]ue to petitioner's incessant and overlapping state post-conviction filings, it would be a Herculean task, one that not even the state attempts to undertake in this case, to determine what periods were tolled thereafter and the precise point at which the federal statute of limitations expired. Further, it is impossible to accomplish that task here because the exact dates on which the numerous post-conviction filings were "filed" under the state "mailbox rule" cannot be determined from the state court record.  Fortunately, as the state points out, the Court need not undertake that task in this case, because it is clear from the state court record that more than one year elapsed during which petitioner had no applications whatsoever pending before any state court.
>
> On May 24, 2002, the state district court denied petitioner's motion for new trial, motion for an out of time appeal, writ of habeas corpus and evidentiary hearing.  Even if the entire period from the date the criminal judgment became final had been tolled up to that point by petitioner's various post-conviction filings, all federal tolling credit nevertheless clearly ceased no later than June 24, 2002, when petitioner's period expired for seeking review of the May 24 denial.  At that point at the latest, petitioner no longer had *any* state court filings pending before *any* state court regarding this conviction or sentence, and he allowed well over a year to elapse untolled before he filed his motion to correct illegal sentence in September of 2003.  Therefore, that period alone, for which no statutory tolling credit is available and during which more than one year elapsed untolled, necessarily exhausted the limitations period and renders his federal application untimely.

Taylor, 2007 WL 3245455, at *2-3 (footnotes omitted)

In the instant case, **the state court record reflects that petitioner had no applications of any kind pending before any state court during the years 2004 through 2009**. Accordingly, the elapse of that extended period during which he is unquestionably entitled to no *statutory* tolling is in and of itself sufficient to render his federal application untimely under the AEDPA's one-year statute of limitations, unless he additionally qualifies for *equitable* tolling.

The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Because tolling does not render petitioner's federal application timely, the merits of the application may be considered by this Court only if he overcomes the limitations bar by proving that he is actually innocent pursuant to McQuiggin v. Perkins, 569 U.S. 383 (2013). In that case, the United States Supreme Court held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." Id. at 386. Here, petitioner does not invoke McQuiggin. However, in the event he does so in any objections to this Report and Recommendation, the

undersigned finds that petitioner has not made the showing required under McQuiggin for the following reasons.

In McQuiggin, the Supreme Court expressly cautioned: "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Further, as the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted). With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013); accord Nordgren v. McCain, Civ. Action No, 18-072, 2018 WL 2187388, at *3 (E.D. La. Apr. 5, 2018), adopted, 2018 WL 2183830 (E.D. La. May 11, 2018); Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *2-3 (E.D. La. July 27, 2015), aff'd, 667 Fed. App'x 474 (5th Cir. 2016), cert. denied, 137 S. Ct. 1105 (2017); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence existing and known at the time of petitioner's trial. That evidence was recounted in the Louisiana Fifth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> The instant case involves four different undercover narcotics transactions. Each one will be individually discussed in the order in which they appear in the indictment.

## COUNT ONE - August 26, 1993

Agent Jerry Butler of the St. Mary Parish Sheriff's Office testified that on August 26, 1993, he assisted the St. Charles Parish Sheriff's Office in making undercover narcotics buys. Specifically, on that particular night at about 9:00 p.m., he saw a subject, whom he subsequently identified as defendant, standing on Good Children Street, and asked him where he could get a piece of crack cocaine. Defendant replied that he did not have any, but offered to take the undercover officer around the corner to get some. Defendant entered the officer's vehicle, and when they got to the appropriate location, advised the officer to park behind Leroy's Bar. After the officer gave defendant $30.00, he exited the vehicle, came back shortly thereafter, and gave the officer a piece of crack cocaine. Upon completion of this buy, Agent Butler placed the cocaine into a plastic bag which he placed in his pocket and later processed and turned over to St. Charles Parish agents. The substance was subsequently sent to the state crime laboratory for analysis. The results of the test, which were introduced at trial, tested positive for cocaine.

Agent Butler identified defendant in court and prior to trial, in a photographic lineup, as the individual from whom he bought narcotics that particular night.

## COUNT TWO - February 17, 1994

Officer Jessie Leblanc of the Lafayette Parish Sheriff's Office testified that on February 17, 1994, he assisted the agents in St. Charles Parish in making undercover narcotics purchases. On that day, Agent Leblanc was introduced to a confidential informant, and they were both placed in his undercover vehicle, given police money, and told to go to certain areas to make purchases. As the officer traveled down Good Children Street at approximately 1:50 p.m., he saw an individual, subsequently identified as defendant, squatting down in the doorway of what looked like an abandoned building on the left hand side of the road. The officer saw the defendant raise one finger, which meant he would give him one rock of crack cocaine. In response to defendant's gesture, the officer nodded his head affirmatively, in an up and down motion. The undercover agent then drove to the end of the street, turned his vehicle around, approached the area of the abandoned building and stopped. When the officer stopped, defendant walked out of the building, went to the driver's side of the window of the vehicle, and without saying anything, placed one rock of crack cocaine in the officer's hand. The officer gave the defendant money, said thank you, and departed the area. Agent Leblanc then placed the narcotics into an evidence bag and wrote the suspect's name, as relayed to him by the confidential informant, on the bag. The substance was subsequently sent to the state crime laboratory for analysis. The results of the test, which were introduced at trial, proved positive for the presence of cocaine.

Officer Leblanc positively identified defendant in court and prior to trial, in a photographic lineup, as the person from whom he purchased the rock of crack cocaine.

## COUNT THREE - February 4, 1994

Agent Ryan Ordoyne of the Lafourche Parish Sheriff's Office testified that he worked in an undercover capacity for St. Charles Parish on February 4, 1994. On that day, he arrived at the S.I.D. Office (Special Investigation Division) where his vehicle was wired with a video camera and a monitoring device. Having been advised of the different areas to go within the parish, the officer, shortly after 2:00 p.m., proceeded to Good Children Street, at which time he was stopped by a black male, subsequently identified as defendant, wearing a multi-colored jacket and knit hat. Defendant showed the officer, who had a $20.00 bill in his hand what appeared to be a rock of crack cocaine. The officer examined it, and agreed to give defendant the $20.00 for it. Defendant gave the officer the rock of crack cocaine and, in exchange, the officer handed defendant $20.00. Officer Ordoyne placed the evidence in a plastic bag and brought it to the S.I.D. office where he field tested, weighed, logged it into evidence and placed it in the evidence locker. The transaction between the officer and defendant was captured on a videotape which was played for the jury at trial. In addition, the officer positively identified defendant in court as the individual that he bought the narcotics from on February 4, 1994.

## COUNT FOUR - January 19, 1994

Agent David Illg of the Plaquemines Parish Sheriff's Office testified that on January 19, 1994, he was involved in an undercover narcotics operation in St. Charles Parish. On that day, he met with Agent Legendre who provide him with sheriff's office funds and instructed him to go into certain areas. After his first purchase, Officer subject [sic] subsequently identified as defendant. The officer advised defendant that he was looking for a twenty, which was known to be crack cocaine. After some discussion, defendant got into the officer's vehicle and took him approximately two streets over to Leroy's Rock House. Defendant exited the vehicle but returned shortly thereafter with another male who was identified as Wilford Joseph, and who was acting very cautiously. After checking the officer out, this second male, Wilford Joseph, handed defendant the crack cocaine and in return, defendant handed Wilford Joseph the money he had gotten from the officer. Defendant then got back into the officer's vehicle and gave him the crack cocaine. The officer brought defendant back to Good Children Street and asked defendant if there was a place where he could "burn the rock," that he needed to hit the rock pretty quick. Pursuant to defendant's direction, the officer pulled into the driveway next door to the residence and acted like he was smoking the crack. The officer then departed the area and met with Agent Legendre at a pre-arranged location. Agent Legendre checked the equipment, viewed the video which captured the transaction, and identified the persons on the video as Alcy and Wilford Joseph. Later that night, after conducting some other transactions, Agent Illg met with Agent Legendre at the Special Investigations Division where the narcotics were logged in, signed over and put into a vault. The substance was sent to the state crime laboratory for analysis. The results of the test, which were introduced at trial, proved positive for the presence of cocaine.

The officer identified defendant in court as the individual that he purchased narcotics from on that day. In conjunction with this officer's testimony, the videotape of the transaction was played for the jury.[25]

The foregoing "old" evidence was clearly compelling proof of petitioner's guilt of the charged offenses. Therefore, he would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Here, petitioner presents no new evidence of the type or caliber referenced in Schlup. Therefore, he has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329; emphasis added). Accordingly, McQuiggin does not aid him.

In light of the foregoing, it is clear that the instant federal application was not filed within the AEDPA's one-year statute of limitations and that petitioner has not overcome the limitations bar by proving that he is actually innocent.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** the federal application for habeas corpus relief filed by Alcy Joseph, Jr., be **DISMISSED WITH PREJUDICE** as untimely.

---

[25] State v. Joseph, No. 96-KA-615, pp. 2-7 (La. App. 5th Cir. Jan. 28, 1997); State Rec., Vol. 6 of 11.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-fifth day of October, 2018.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**